UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80285-CIV-MARRA

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, as subrogee,

    Plaintiff,

vs.

WEEKS MARINE, INC.,

    Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause comes before the Court on the parties' competing motions for summary judgment. (DEs 20, 31). The motions are ripe for review. For the following reasons, the Court concludes that both motions should be denied.

### I. Background[1]

This admiralty action arises out of the allision[2] of a sixty-one foot pleasure yacht with a section of floating dredge pipeline near Jupiter, Florida. The yacht, the M/Y CLAUDIAN, was insured by Plaintiff National Union Fire Insurance Company. The pipeline was owned by Defendant Weeks Marine.

---

[1] The following factual background is gathered from the undisputed portions of the parties' Statements of Material Fact ("SOF"). (DE 20 at 2-12; DE 31 at 1-7).

[2] "An allision is the sudden impact of a vessel with a stationary object such as an anchored vessel or a pier. A collision, on the other hand, is the crashing together of two vessels." Superior Constr. Co. v. Brock, 445 F.3d 1334, 1336 n.1 (11th Cir. 2006) (internal quotation marks, citations, and alterations omitted) (quoting Black's Law Dictionary (7th ed. 1999)). The Court adopts the parties' practice of calling the accident at issue an "allision."

Defendant was engaged by the Town of Jupiter to conduct dredging operations to restore sand to the town's beaches. (See Pl. SOF ¶ 17). To that end, Defendant used at least five forty foot sections of floating pipeline (200 feet in total length) (the "Floating Pipeline") that were connected to a submerged pipeline about 2,500 feet from shore. (Id. ¶¶ 7, 20). The Floating Pipeline was attached to the seaward end of the submerged pipeline and anchored to the seabed by a concrete block. (Id. ¶ 21; Def. SOF ¶ 7). The Floating Pipeline was encased in foam material (Pl. SOF ¶ 22), which was four to four and one-half feet in diameter, and it floated at least two feet above the water line and bore orange-on-yellow, orange-on-black, or white-on-black coloration (Def. SOF ¶ 6; DE 34 at 5 (Plaintiff is not contesting the diameter, displacement, or coloration of the Floating Pipeline)).

On February 12, 2012, the M/Y CLAUDIAN was en route to Ft. Lauderdale from New York. (Pl. SOF ¶ 1). Captain Amir Ravon served as captain, and Captain Henning Heinemann stood second hand. (Pl. SOF ¶¶ 2-3; Def. SOF ¶ 10). As the M/Y CLAUDIAN neared the waters off Jupiter, Captain Ravon manned the helm while Captain Heinemann slept in the salon. (Def. SOF ¶ 18). Visibility was complete for ten to twelve miles (id. ¶ 26), and the skies were clear of rain, fog, and haze (Pl. SOF ¶ 28). At approximately 4:00 p.m., the M/Y CLAUDIAN struck a yellow section of the Floating Pipeline. (Def. SOF ¶ 16). Captain Ravon did not see the Floating Pipeline through either visual observation or radar detection before the allision. (id. ¶ 24).

The allision resulted in insured damages of $220,880.54 to the M/Y CLAUDIAN. (Pl. SOF ¶¶ 36-38). The yacht's owner subrogated his rights to Plaintiff, and Plaintiff initiated this action against Defendant. (DE 1). Plaintiff's complaint consists of one count of maritime

2

negligence, alleging that Defendant failed to exercise reasonable care under the circumstances in operating the Floating Pipeline.  (Id. ¶ 11).

Plaintiff moved for summary judgment first.  (DE 20).  It argues that it has established Defendant's negligence as a matter of law.  Alternatively, it asks for partial summary judgment on discrete questions of law, such as the application of the Oregon Rule and Pennsylvania Rule to this case.  (Id. at 14, 15).

Defendant also moved for summary judgment.  (DE 31).  It seeks determinations as a matter of law that (1) the Oregon Rule and Pennsylvania Rule apply and impose presumptions of fault against Plaintiff, (2) that Plaintiff has failed to rebut those presumptions, (3) that Defendant did not violate any statutes or regulations, and (4) that Defendant's negligence did not cause or contribute to the February 12, 2012 allision.  (DE 31 at 1).

At this juncture, the Court concludes that these issues are incapable of resolution as a matter of law; summary judgment will be denied on all facets of the case.

## II.  Discussion

**A.     Legal Standard**

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of establishing the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It must do so by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P.

56(c)(1)(A). If the movant bears the burden of persuasion at trial, "that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." Celotex, 477 U.S. at 331. Therefore, the movant must satisfy both the initial burden of production on the summary judgment motion, by showing that no genuine dispute exists as to any material fact, and the ultimate burden of persuasion on the claim, by showing that it would be entitled to a directed verdict at trial. See id. On the other hand, if the burden of persuasion lies with the nonmovant, summary judgment may be granted where the movant either negates an essential element of the nonmovant's claim or demonstrates to the Court that the nonmovant's evidence is insufficient to establish an essential element of that claim. Id. Any doubt regarding whether a trial is necessary must be resolved in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

After the movant has met its burden of production under Rule 56(a), the burden of production shifts to the nonmovant. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts or materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot product admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B). The nonmovant's evidence cannot, however, "consist of conclusory allegations or legal conclusions." Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991) (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). And where the nonmovant bears the burden of persuasion on a claim, it must come forward with more than a mere scintilla of evidence supporting its position; "there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.

1990).

**B.     The Oregon Rule**

"The Oregon Rule states that when a vessel moving under its own power allides with a stationary object, the moving vessel is presumptively at fault."  Fischer v. S/Y NERAIDA, 508 F.3d 586, 593 (11th Cir. 2007).  The rule derives from The Oregon case, in which the Supreme Court considered the collision of two vessels, one of which was "at anchor."  158 U.S. 186, 192 (1895).  It has been held that the Oregon Rule does not apply where the stationary object is sunken, hidden, or submerged.  See Delta Transload, Inc. v. Motor Vessel, "Navios Commander", 818 F.2d 445, 450 (5th Cir. 1987).

Plaintiff argues that the Oregon Rule does not apply because the Floating Pipeline was "semi-stationary" and "not stationary in the sense that a bridge is stationary." (DE 20 at 15).  On its face, this argument ignores the obvious fact that The Oregon involved the allision of two vessels, neither of which were "stationary in the sense that a bridge is stationary."  A vessel at anchor is subject to the movements of the ocean in the same way that a floating pipeline anchored to the seabed would be.  This indicates that the Floating Pipeline, which was anchored and "stayed in place" (Pl. SOF ¶ 21), was "stationary" and subject to the Oregon Rule despite its susceptibility to the movements of the ocean.[3]  See London Assurance v. Companhia de Moagens do Barreiro, 167 U.S. 149, 155 (1897) (describing a "stationary" vessel as one "at anchor or at wharf"); The Director, 180 F. 606, 610 (S.D. Ala. 1910) ("She was then at anchor and stationary."); The Scioto, 21 F. Cas. 774, 775 (D. Me. 1847) ("[A] vessel at anchor is

---

[3] In fact, the very use of the word "allision" suggests that this accident involved a stationary object.  See Superior Constr. Co., 445 F.3d at 1336 n.1.

stationary."); cf. Self Towing, Inc. v. Brown Marine Servs., Inc., 837 F.2d 1501, 1503 (11th Cir. 1988) (vessel "stationary" when "moored").

However, something must be said of Plaintiff's contention that the Floating Pipeline was "partially sunken, hidden or submerged" leading up to the allision.  (DE 34 at 22).  Although the Floating Pipeline was not "sunken" or "submerged" as those terms are used to describe the objects in the cases cited by Plaintiff, see Delta Transload, Inc., 818 F.2d at 449-50 (rejecting presumption of fault where record indicating that buoy was "submerged" as it "normally rested below the river's surface"); Pelican Marine Carriers, Inc. v. City of Tampa, 791 F. Supp. 845, 852 (M.D. Fla. 1992) (rejecting presumption of fault where moving vessel struck "submerged" sewer line and cap that sat approximately thirty feet below mean low water level); see also Peoples Natural Gas Co. v. Ashland Oil, Inc., 604 F. Supp. 1517, 1525 (W.D. Pa. 1985) (rejecting inference of fault where moving vessel collided with "submarine pipeline"), the Court is unable to determine as a matter of law whether the Floating Pipeline was partially hidden from the view of mariners traveling in the direction of the M/Y CLAUDIAN at the time of the allision.

The parties dispute the conditions of the sea, whether the size and direction of the waves obstructed the M/Y CLAUDIAN's view of the Floating Pipeline, and whether the Floating Pipeline was detectable by radar.  These disputes of material fact prevent the Court from determining, as a matter of law, that the M/Y CLAUDIAN allided with a visible, stationary object in a way that justifies imposing a presumption of fault against its operators.  The parties also dispute whether Captain Ravon knew or should have known about the existence of the Floating Pipeline in the waters off Jupiter.  Accordingly, the parties' motions for summary judgment are denied as to the application of the Oregon Rule.

**B.      The Pennsylvania Rule**

It is well established in admiralty law that "[w]hen a ship is involved in a collision and that ship is in violation of a statutory rule designed to prevent collisions, the burden shifts to the shipowner to prove that the violation was not a contributing cause of the collision." Am. Dredging Co. v. Lambert, 81 F.3d 127, 130 (11th Cir. 1996). This rule, the "Pennsylvania Rule," applies where one of the parties to an allision is in actual violation of a statute (or regulation) "intended to prevent [allisions]." The Pennsylvania, 86 U.S. (19 Wall.) 125, 136 (1873); Trinidad Corp. v. S.S. Keiyoh Maru, 845 F.2d 818, 826 (9th Cir. 1988) (holding that violation of safety regulation triggers the Pennsylvania Rule).

In this case, both parties allege that the other violated safety regulations intended to prevent allisions:[4] Defendant contends that the Pennsylvania Rule applies against Plaintiff because Captain Ravon violated several regulations in his operation of the M/Y CLAUDIAN (DE 31 at 7-12); Plaintiff contends that Defendant violated regulations by failing to mark adequately the Floating Pipeline (DE 20 at 17-24). The Court will take each party's contentions in turn.

**1.     Captain Ravon's Safety Violations**

Defendant argues that Captain Ravon's failure to consult the Local Notices to Mariners,

---

[4] The Eleventh Circuit has held that "[w]hen both vessels involved in the allision are operating in violation of statutes designed to prevent such mishaps, the [Pennsylvania] rule requires the district court to find that the statutory fault of both vessels contributed to the accident, unless it [finds] that the fault of either . . . could not have been a cause of the [allision]." Superior Constr. Co., 445 F.3d at 1340 (11th Cir. 2006) (internal quotation marks omitted). "In other words, if each vessel successfully invokes the Pennsylvania Rule against its opponent, then each vessel must overcome a presumption of fault by showing its violation could not have been a cause of the allision." Id. Resolution of this matter is unnecessary at this time, however, as the Court concludes that neither party has successfully invoked the Pennsylvania Rule.

which notified mariners that Defendant was conducting dredging operations near Jupiter, constitutes a violation of federal regulations and the International Regulations for Preventing Collisions at Sea ("COLREGS"). (DE 31 at 8, 10).

First, Defendant contends that Captain Ravon violated 33 C.F.R. § 62.21(c), which provides that the "navigator should maintain and consult suitable publications and instruments for navigation depending on the vessel's requirements." The regulation lists "publications [that] are available from the U.S. Government to assist the navigator," including "Local Notices to Mariners." 33 C.F.R. § 62.21(c)(3).

The word "should" stands in the way of Defendant's contention that Captain Ravon violated this provisions as a matter of law. "The word 'should' means 'usually no more than an obligation of propriety or expediency, or a moral obligation.'" Lambert v. Austin Ind., 544 F.3d 1192, 1196 (11th Cir. 2008) (quoting Black's Law Dictionary 1379 (6th ed. 1990)). As such, language suggesting that something "should" be done "is phrased using permissive, rather than mandatory, language." Id. Although the ultimate findings of fact may demonstrate that it was unreasonable for Captain Ravon not to consult the Local Notices to Mariners, what "suitable publications" Captain Ravon "should" have consulted based on the "vessel's requirements" is a disputed question of fact incapable of resolution on summary judgment.

Second, Defendant argues that Captain Ravon violated 46 C.F.R. § 26.03-4's requirement that "all vessels must carry adequate and up-to-date" charts and tables. (DE 31 at 9). It argues that Captain Ravon's failure to "obtain, consult or read the Local Notice to Mariners" violates this provision. (Id.). Section 26.03-4 says nothing about "consulting or reading" the listed documents, only that a vessel "must carry" them. Defendant has not presented undisputed

8

evidence that the M/Y CLAUDIAN was not carrying the most recent Local Notice to Mariners. Moreover, what documents are "adequate" and "appropriate for the intended voyage," 46 C.F.R. § 26.03-4(a), are questions of fact incapable of resolution at this time.

Finally, Defendant argues that Captain Ravon's failure to consult the Local Notices to Mariners constitutes a violation of various COLREGS rules. (DE 20 at 10). Specifically, it argues that Captain Ravon violated Rules 5, 6, 7, and 8 of the COLREGS.[5] These rules require that:

> RULE 5: Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.
>
> RULE 6: Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions. . . .
>
> RULE 7(a): Every vessel shall use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists. If there is any doubt such risk shall be deemed to exist. . . .
>
> RULE 8(a): Any action taken to avoid collision shall be taken in accordance with the Rules of this Part and shall, if the circumstances of the case admit, be positive, made in ample time and with due regard to the observance of good seamanship. . . .

Rule 8 is inapplicable to the case at hand because the undisputed evidence demonstrates that Captain Ravon did not take any action to avoid the allision with the Floating Pipeline. (Def. SOF ¶ 24 (Captain Ravon did not see the Floating Pipeline until after sailing over it)).

---

[5] The statutory authorization for the COLREGS is found at 33 U.S.C. § 1602(a). A version of the rules may be found at http://www.navcen.uscg.gov/pdf/navRules/navrules.pdf.

Defendant cites cases in which courts have found that violations of the COLREGS support application of the Pennsylvania Rule.  (DE 31 at 11-12).  Each case Defendant cites, however, was decided on findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, not summary judgment under Rule 56.  See, e.g., In re Backcountry Outfitters, Inc., 2008 WL 516792, at *1 (N.D. Fla. 2008) (issuing findings and conclusions after bench trial); Todd v. Schneider, 2003 WL 23514560, at *1 (D.S.C. 2003) (same).  Rules 5, 6, and 7 require a fact-specific inquiry into what was "appropriate in the prevailing circumstances and conditions."  Disputed questions of fact preclude the determination that Captain Ravon violated COLREGS Rules 5, 6, and 7 as a matter of law.

Accordingly, Defendant's request for summary judgment on the application of the Pennsylvania Rule against Plaintiff will be denied.

### 2. Defendant's Safety Violations

Plaintiff argues that Defendant violated safety regulations by failing to mark the Floating Pipeline "with a buoy, preferabl[y] one that was radar reflecting."  (DE 20 at 17, 23 ("[A] buoy with a regulatory marker was required to mark the obstruction.")).  Specifically, it argues that Defendant violated 33 C.F.R. § 64.11, which provides "[m]arking and notification requirements" for "Sunken Vessels and Other Obstructions."  Defendant argues that these requirements do not apply to the Floating Pipeline.  (DE 33 at 14, 16).

Part 64 regulates the "marking of wrecks, structures, and other obstructions."  33 C.F.R. § 62.1(b)(1).  An "obstruction" means "anything that restricts, endangers, or interferes with navigation," and a "structure" is "any fixed or floating obstruction, intentionally placed in the water, which may interfere with or restrict marine navigation."  Id. § 64.06.  Exempted from Part

64 are all "[d]redging pipelines subject to Subchapter D of [33 C.F.R. Ch. I]," i.e., the COLREGS. Id. § 64.03(b)(1). The parties dispute when a dredging pipeline falls under this exemption. The Court is unable to find another case in which a court interpreted the exemption provision of 33 C.F.R. § 64.03(b)(1). It declines to do so because it concludes that Plaintiff has not established that Defendant violated Part 64 as a matter of law, regardless of whether or not that part applies.

Plaintiff directs the Court's attention to Subpart B of Part 64, "Sunken Vessels and Other Obstructions." (DE 20 at 21). Quoting the version of the regulation in effect at the time of the allision, Plaintiff recites, "The owner of a sunken vessel, raft, or other obstruction that otherwise constitutes a hazard to navigation shall mark it in accordance with this subchapter." (Id.) (emphasis added) (quoting 33 C.F.R. § 64.11(a) (2011)).[6] Because the Floating Pipeline was an "obstruction," Plaintiff argues that it must be marked. (See DE 20 at 22).

Plaintiff's argument suffers two flaws. First, Plaintiff leaves it to the Court to guess what it means for an obstruction to be marked "in accordance with this subchapter." Plaintiff offers the testimony of Captain Heinemann that "a buoy with a regulatory marker was required," but Plaintiff fails to link this alleged requirement to any specific regulatory provision. (DE 20 at 23). The only regulation it cites, 33 C.F.R § 62.33, "Information and regulatory marks," imposes no explicit marking duties on mariners. Simply put, Plaintiff has not identified the particular marking requirement that Defendant actually violated.

Second, it seems that a more specific section of Part 64 governed the marking of the

---

[6] The regulation now reads, "The owner and/or operator of a sunken vessel, raft, or other craft that constitutes a hazard to navigation must mark it in accordance with this subchapter." 33 C.F.R. § 64.11(b) (2014) (emphasis added).

Floating Pipeline. Subpart C of Part 64 governs the marking and notification requirements for "structures." 33 C.F.R. § 64.21. The Floating Pipeline readily meets the definition of a "structure" as it was a "floating obstruction, intentionally placed in water, which may interfere with or restrict marine navigation." Id. § 64.06. Thus, Subpart C ("Structures") is more applicable to laying of the Floating Pipeline than Subpart B ("Sunken Vessels and Other Obstructions"). Subpart C requires that "[b]efore establishing a structure, the owner of operator shall apply for Coast Guard authorization to mark the structure . . . . The appropriate District Commander will determine the marking requirements." Id. § 64.21. There is no indication as to what, if any, markings the District Commander determined to be appropriate for the establishing of the Floating Pipeline.[7]

Plaintiff has not identified a direct marking requirement that governed Defendant's conduct and that Defendant violated. Accordingly, it has not demonstrated that the Pennsylvania Rule applies against Defendant as a matter of law.

**C.   Negligence**

Each party seeks a summary judgment determination that it was free of fault and that the other party was at fault for causing the allision. A myriad of genuine issues of material fact prevent this Court from adjudicating as a matter of law which party was and was not acting reasonably under the circumstances. Among other things, the parties dispute the conditions of

---

[7] The Court notes that even under Subpart B, it appears that the District Commander is the ultimate decider of what markings are required. "All markings of sunken vessels and other obstructions established in accordance with § 64.11 must be reported to and approved by the appropriate District Commander. Should the District Commander determine that these markings are inconsistent with Part 62 of this subchapter, they must be replaced as soon as practicable with approved markings." 33 C.F.R. § 64.13(a) & (b) (2011); 33 C.F.R. § 64.11(g) & (h) (2014).

the sea, the visibility of the Floating Pipeline from the M/Y CLAUDIAN, the interpretation of radar readings, and the captains' level of knowledge of the Floating Pipeline before the allision. Accordingly, summary judgment must be denied on all issues of ultimate responsibility for the allision.

### III.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment (DE 20) is **DENIED** and that Defendant's Motion for Summary Judgment (DE 31) is **DENIED**.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 28th day of January, 2015.

_____
KENNETH A. MARRA
United States District Judge